## The McClintic Marshall Construction Company v. Eckman.

### (Decided May 13, 1913).

### Appeal from Campbell Circuit Court.

1. Appeal—Estoppel to Allege Error—Instructions.—A party cannot, on appeal, complain of an instruction of the same import as that which he himself asked; or of an instruction, good as far as it goes, where he does not ask for a modification.
2. Damages—Personal Injuries—Loss of Time—Instructions.—In an action for personal injuries, an instruction covering special damages for time lost should limit the jury in its award to the value of such time lost between the date of the injury and the time of trial.
3. Appeal—Granting New Trial—Discretion—Evidence.—The trial court has broad discretion in granting a new trial and his ruling will not be disturbed, unless it is apparent that he has abused his discretion. Held, evidence does not show an abuse of discretion.

JAMES C. WRIGHT for appellant.

B. F. GRAZIANI, H. W. ROOT for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The Andrews Steel Company is a corporation engaged in the manufacture of steel billets and other steel products and material, in Campbell County, Kentucky. Prior to November 15, 1910, it entered into a contract with the McClintic Marshall Construction Company, by which the construction company was to make certain improvements and repairs at its mill plant. Under the terms of their

agreement the repairs were to be made without interfering with the operation of the mill, the owners thereof being thereby saved the necessity of shutting down the mill while the work was being done.

Charles Eckman was employed by the construction company. On November 15, 1910, while acting under the direction of his employer, in moving a scaffolding, which duty required him to go upon a beam some 28 or 30 feet from the ground, he was struck by an iron crane, with such force that he was knocked from the beam and sustained serious and permanent injuries.

Alleging that his injuries were directly attributable to the negligence of his employer, together with that of the steel company, Eckman sued for damages. The defendants filed separate answers, in which they denied all negligence on their part and pleaded affirmatively that the injury was either the result of an assumed risk, or else due to the negligence of the plaintiff himself. The case proceeded to trial in December, 1911, when, after a full hearing, the jury returned à majority verdict in favor of the plaintiff for $10,000 against the construction company and $2,000 against the Andrews Steel Company. Judgment was entered upon these verdicts. Thereafter, in due time, motion and grounds for a new trial were filed and, upon consideration, the motion was sustained upon the single ground that the verdict was excessive. The case was again called for trial in June, 1912. At that time plaintiff recovered a verdict against the construction company for $6,120 and against the Andrews Steel Company for $1,530. Judgment having been entered thereon and the motion for a new trial having been overruled, the construction company prayed, and prosecutes, this appeal. The judgment against the Andrews Steel Company was settled. Plaintiff has prosecuted a cross-appeal as to the construction company and seeks to have the order of the court, setting aside the former judgment and granting a new trial, vacated and the original judgment against the construction company reinstated.

The construction company relies for reversal upon two grounds: First, that the court erred in authorizing the jury to find for the plaintiff upon a showing that the construction company was guilty of ordinary negligence, it being contended that the foreman in charge of the work, whose negligence is relied upon to justify a recovery, was a fellow workman with plaintiff, of a higher grade, and this being true, it is insisted that plaintiff

could recover only for gross negligence on the part of said fellow workman; and, second, it is insisted that the court erred in his instruction defining the measure of damages.

The accident, which resulted in appellee's injury was brought about in the following manner: The employes of the construction company were using, in their work, a scaffolding which it was necessary, from time to time, to move. The scaffolding was supported by ropes fastened to a runner, or beam, upon which a heavy crane moved. This beam was twenty-eight feet from the ground. To loosen these ropes that the scaffold might be moved, it was necessary for some of the men to go upon this runner; and appellee was directed to assist in this work. There were several hundred men at work in and about the mill, and the noise was great. Three heavy cranes were operated in the mill, and it was known by the construction company, and its employes as well, that the work was attended with more or less danger—that the employes of the construction company were liable, at any time, to be injured by the movement of this crane. The evidence shows that A. G. Bierman, foreman in charge of the construction company's work, was apprised of this danger, and that he assured appellee, and other employes, that he would station a man at a position where he could keep a lookout and advise them as to the movement of the crane, so as to avoid injuring them. In compliance with this promise, on his part, a man named Stevens was placed in a position where he had a perfect view of the crane which struck appellee, was directed to observe its movements and notify appellee and his associates so that they might avoid being injured. After Stevens had remained in this position some few minutes, Bierman, the foreman, called him away and assigned him to some other duty, leaving no one to observe and warn appellee and his associates of the movement of the crane. A few minutes thereafter the crane was moved without appellee's knowledge, and, before he knew that he was in danger, he was struck by it, thrown to the ground and severely and permanently injured. His leg was broken in two places, near the ankle; he was injured internally, suffered severely, and is, according to the testimony, a cripple for life. The injured leg lost about 90 per cent of its motion and 75 per cent of its strength and is materially shortened.

Counsel for appellee insist that Bierman was not a fellow servant, of a higher grade, of appellee, but a vice-principal, and that, therefore, the instruction, as given by the court, is correct, and finds ample support in numerous opinions of this court defining the degree of negligence which will authorize a recovery where an accident has resulted from the negligence of a vice-principal. It is not altogether clear from the evidence just what relation Bierman bore to the construction company, but, from the conclusion which we have reached, it becomes unnecessary to determine this question.

Counsel for appellant offered instruction "A," in which he defined the degree of negligence on the part of Bierman, the agent of the construction company, which would authorize a recovery for the plaintiff; and, upon the vital question of the degree of negligence which would authorize a recovery there is no substantial difference between instruction "A" and instruction No. 1, as given by the court, of which complaint is made. The law looks to the substance, rather than to the form, of an instruction, or, to state it otherwise, it looks through the form of the instruction, as drawn, to the substance. It has, many times, been held that where a litigant asks for an instruction embodying practically the idea embodied in an instruction given by the court, the litigant is afforded no ground of complaint, even though the instruction given is erroneous. This ruling applies only to that class of cases in which the idea, assailed as erroneous, in an instruction given, is also contained in an instruction asked. In other words, a litigant may not ask the court to instruct the jury in a particular way, and, when that request is complied with, complain of the ruling of the court, even though, in the draft of the instruction, the court may express the idea in a different form from that in which it was expressed in the instruction asked. The most recent case in which this principle was announced is that of Louisville & Nashville R. R. Co. v. Wilson, 148 Ky., 250, in which this court said:

"But we have also held that the appellant cannot complain of an instruction which he himself asked, or where he offered an instruction of the same import as that complained of. * * *

"The instructions which the defendant asked and the instructions which the plaintiff asked were the same in import as to the negligence on the part of Hester that would warrant a recovery. One of the instructions to the

jury, given on the motion of the defendant, told the jury in substance that the plaintiff could recover for the failure of Hester to exercise ordinary care. The defendant cannot, therefore, here complain of an error of the court in instructing the jury, which it brought about itself, or ask a reversal for an instruction which it asked on the trial.''

In the opinion, from which we have quoted, the identical question was raised that is raised here. It was there contended that the injury was due to the negligence of a servant of a superior degree, and that no recovery could be had unless it was shown that the negligence was gross. While holding that this was a sound legal principle, we declined to reverse that case, because, as here, the appellant asked an instruction authorizing a recovery for ordinary negligence. The rule announced in that case applies with equal force to the case at bar, and is too well settled by numerous decisions of this court to need further elaboration.

Passing now to the one remaining point relied upon by counsel for appellant for reversal, we find that the court, on the measure of damages, told the jury:

''If the jury find for the plaintiff as against either or both of the defendants, they will allow him such sum in damages as they may believe from the evidence will fairly and reasonably compensate him for such reasonable expense, if any, incurred by him for physicians' services and for nursing, not to exceed the sum of $250 for the former, nor the sum of $140 for the latter; for such loss of time, if any, not exceeding in time the period of seven months, nor the sum of $12 per week; for such physical and mental suffering, if any of either he may have endured, and for such permanent impairment, if any, of his power to earn money, directly resulting to the plaintiff from the injuries received as aforesaid, not exceeding, however, in all the sum of $25,726, amount claimed in petition.''

This identical instruction has, many times, been approved by this court, and in the comparatively recent case of Blue Grass Traction Co. v. Ingles, 140 Ky., 488, many of the previous authorities are reviewed and the instruction is again approved as correctly stating the measure of damages, though it is there held that, where the defendant wishes, the court should tell the jury that, in fixing its award for lost time, it is limited to a consideration of such time as has elapsed between the date of

the injury and the time of the trial; but, clearly, where no such modification is asked, it cannot be said to be error for the trial court to fail to give it. It does not appear that such an instruction in this form was asked in the case at bar, and, under the express authority of the Ingles case, *supra,* no ground of complaint is afforded because the court failed to thus modify the instruction given defining the measure of damages.

The only remaining question is, did the court err in setting aside the verdict and judgment, under which appellee recovered $12,000, and in awarding appellant a new trial? As has been well said, it is largely a matter of speculation on the part of both court and jury, as to what sum is a fair, just and reasonable compensation, which should be given as damages for an injury; and it is always with a degree of hesitation that verdicts are set aside and new trials awarded upon the ground that the sum allowed is excessive. The age of the injured party, his earning capacity, the nature of his injury, the extent of his suffering, the resultant effect upon the health and occupation of a claimant after a cure is effected as fully as one may be had, all of these matters enter into their consideration by the jury, in determining what their award shall be; and, unless it appears at first blush that the sum awarded is altogether disproportionate with the injury sustained, the finding of the jury should not be disturbed. Take the case at bar. Appellee was severely injured; he sustained a compound fracture of the left leg near the ankle, which was not only a very severe injury but one which was accompanied with great pain. Undoubtedly, during the few days and weeks following the accident his suffering was great. Even at the time of the last trial he was still suffering with his ankles and knees, and the suffering might properly be attributed to the injury. His leg is shortened; its use very materially lessened; its strength reduced. He is incapable of following successfully the only vocation in life, for which he had fitted himself. His misfortune necessitates his seeking employment in a different field of labor. It is stated that his earning capacity is reduced one-half. Prior to the accident he was earning approximately $20 per week, while now he is incapable of earning in excess of say $10 per week. Upon the first trial he was awarded $12,000; upon the second trial, $7,650. When the first trial was had the permanency of his injuries and his capacity to labor at occupations he had formerly pursued were not so thoroughly demon-

strated as in the last trial, and yet the jury, by unanimous verdict, awarded him $4,350 less as compensation. This discrepancy between the awards of these two juries emphasizes the fact that all awards of this character are more or less speculative. The evidence as to his suffering and as to the permanency of his disability was practically the same upon each trial. The sum awarded upon the second trial is large, but, to our minds, is not disproportionate to the injuries sustained. While judgments have been upheld sustaining verdicts approximately as large as that awarded upon the first trial, we have, in no instance, disturbed the finding of the trial court, where a new trial has been awarded because of excessive damages, when the amount involved was no greater than it is in this case; for we appreciate that there are many facts and circumstances arising during the progress of a trial which fall immediately under the notice of the trial court, and yet do not become a part of the record, which influence the jury in reaching their verdict, and the trial court always has this advantage in determining whether or not a new trial should be awarded. On this account, we have frequently said that the trial court is given broad discretion, and that his finding in granting a new trial is never disturbed unless it is apparent that he has abused this discretion. The evidence in the case before us does not justify the inference that the trial court did, in this instance, abuse his discretion; and we are of opinion that the judgment awarding a new trial should not be disturbed.

Upon a consideration of the whole case, we are satisfied that appellee was injured through the negligence of the appellant company; that he was entitled to be compensated therefor; and the sum awarded by the jury is not disproportionate to the injuries proved.

Judgment affirmed upon both the original and cross-appeal.