## Louisville & I. R. Co. v. Schuester.

(Decided March 7, 1919.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Negligence—Contributory Negligence—Motor Vehicles.—Operator of a motor truck not guilty of contributory negligence as a matter of law simply because as he approached a dangerous grade crossing after looking and listening he fixed his gaze upon the crossing, which was rough and in bad condition, in order to drive his truck across the railroad tracks or because he did not stop and look and listen.

2. Negligence—Care to be Exercised at Dangerous Crossings—Instructions.—While both the plaintiff and defendant at a dangerous crossing must exercise the same degree of care commensurate with the danger the defendant can not complain of the failure of the instructions to place upon the plaintiff this degree of care where the court gave substantially the same instruction as plaintiff offered upon the question.

3.  Damages—Negligent Destruction of Property.—Where personal property which is actually in use at the time and can be replaced is destroyed negligently, the owner may recover its value at the time and in addition as special damages the value of its use until it could be replaced or interest from the date of destruction, but he can not recover both interest and the value of its use.

ALFRED SELIGMAN, STRAUS, LEE & KREIGER and HOWARD B. LEE for appellant.

NATHAN KAHN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Guetig's lane, a public road, crosses appellant's track a short distance east of the corporate limits of the city of Louisville, and near the crossing, at which appellant maintains an automatic electric alarm bell, there is a building on the western edge of the highway, which is 27 feet from the railroad track, with a porch that extends to within about 16 feet of the track.

At about ten a. m. June 21, 1916, appellee, driving his automobile truck, loaded with milk and passengers, north on Guetig's lane, attempted to cross appellant's track at the crossing, when an east bound work train struck the truck. Alleging the collision was caused by the gross negligence of appellant's agents in charge of its work train, appellee instituted this action and recovered a verdict and judgment for $1,500.00, for the destruction of his truck, $200.00 for loss of its use, and $145.00 for the loss of cans and milk.

To reverse that judgment the defendant relies upon three grounds: (1) the verdict is flagrantly against the evidence; (2) the instructions put upon defendant a higher duty at the crossing than upon plaintiff, and (3) the measure of damages was erroneously defined.

1. As plaintiff approached the crossing his view of the railroad track in the direction the work train was coming, as well as the view of the train crew of the road on the side from which plaintiff was approaching, was for a time completely obstructed by the building above described, and somewhat interfered with, if not completely obstructed, by some large trees near the railroad track about 70 or more feet west of the crossing. Appellant testified that as he neared the crossing he reduced the speed of his truck to four or five miles an hour, looked up and down the track 25 or 30 feet, as he passed from

behind the store building and listened for signals of an approaching train; that he could have seen down the track 70 or 80 feet to where it was almost covered by four large trees in full foliage; that he saw no train; that no signals of any kind were given from the train and that the stationary automatic bell was not ringing; that he then fixed his attention upon the railroad crossing, which was rough and in bad condition, in order to drive his truck across the track with as little jar to his milk and passengers as possible; that he could have stopped his truck within a foot or almost immediately; that just as he got on the track some one said "jump," and looking up he saw the train was within 25 or 30 feet of him; that its whistle and bell sounded just before it hit his truck. Quite a number of witnesses were introduced by both parties as to whether the train gave signals of warning as it approached the crossing, and whether the stationary bell was ringing, with the usual result, some witnesses testifying one way and about the same number the other, so there can be no doubt the issue as to defendant's negligence was for the jury, as was also we think the question of plaintiff's contributory negligence, since we would be unwilling to say as a matter of law plaintiff was negligent in fixing his gaze upon the crossing after looking up and down the track, as he testified he did, even though possibly he might have been able to have seen the train's approach in time to have stopped his truck before reaching the crossing, had he kept his eyes constantly on the tracks, since prudence demanded of him that he should give a part of his attention at least to the road and crossing over which he had to drive his truck, especially since the crossing was rough and in bad condition; and he was under no absolute duty to stop. L. & N. R. R. Co. v. Treanor, 179 Ky. 337.

There was in our judgment ample evidence to support the verdict upon the questions of negligence and contributory negligence, and we find no merit in the first contention.

2. Instruction No. 1, defining defendant's duty with respect to the crossing, clearly proven to be an unusually dangerous one, required of it care commensurate with the danger, and of this there is no complaint, but it is insisted the court erred in instruction No. 2 in not placing upon plaintiff the same duty of exercising increased care commensurate with the increased danger; and this is true,

since we have uniformly held that the rights and duties of the company and highway travelers with reference to an unusually dangerous grade crossing are reciprocal, and that in its use each must exercise the same degree of care commensurate with the danger. L. & N. R. Co. v. Locker's Admr., 182 Ky. 578; L. & N. R. Co. v. Breeden's Admr., 111 Ky. 739; C. N. O. & T. P. Ry. Co. v. Champ., 31 R. 1057; L. & N. R. Co. v. Park's Admr., 154 Ky. 269.

But in this case the defendant is not in a position to avail itself of this error, because instruction No. 2 of which it complains, is almost an exact copy of, and in substance identical with the only instruction it asked the court to give upon the subject. Gorman's Admr. v. Louisville Ry. Co., 72 S. W. 761; L. & N. R. Co. v. Wilson, 148 Ky. 251, 146 S. W. 422; McClintic Marshall Con. Co. v. Eckman, 153 Ky. 707, 156 S. W. 382.

3. Instruction No. 4 defined the measure of damages thus:

"No. 4. If you find for the plaintiff, you will award to the plaintiff such sum in damages as you believe from the evidence will reasonably and fairly represent the difference in the reasonable market value of the motor truck just before it was injured and its reasonable market value immediately after it was injured, and if you believe from the evidence that the motor truck could be repaired at a less cost than its reasonable market value before it was injured, then you will also award to the plaintiff the reasonable net rental value upon the market in Louisville of the truck in question or other trucks of like capacity and equal performance, the lessee furnishing the driver and bearing all such other expenses as the owner himself would have to bear in the operation of his truck for such length of time as would be reasonably necessary to make such repairs, not to exceed a period of three weeks at $25.00 a day, and not to exceed $525.00. If you believe from the evidence that the motor truck could not be repaired, then in addition to the difference between the market value of the truck just before it was injured, not exceeding $2,675.00 and the market value of the truck immediately after it was injured, not less than $350.00, you will award to the plaintiff the rental value of a truck as in this instruction defined for such time as you believe from the evidence would necessarily elapse until a truck of like capacity to the truck in question could be purchased and delivered for use in Louisville, not to

exceed on that account thirty-two days at $25.00 a day, and not exceeding $800.00, your verdict in no event, for injury to the motor truck, shall exceed what you believe from the evidence was the reasonable market value of the truck immediately before it was injured, not to exceed $2,675.00. If you find for plaintiff you will further award to the plaintiff the reasonable value of the milk and milk cans destroyed not to exceed on that account $164.40.''

It will be noticed the court submitted the question of whether there was a reparable injury to or a complete destruction of the truck, which was proper under the evidence, and the only objection is that it was error to allow anything in excess of the difference between its market value just before and just after the collision, if the jury believed the truck was destroyed and not reparable.

In support of this contention, we are referred to Southern Ry. Co. v. Ky. Grocery Co., 166 Ky. 97, in which in discussing the criterion of damages for a reparable injury, which was all that was before the court, it was assumed and stated to be the law that ''there can be no recovery beyond the reasonable market value of the property at the time and place of the injury when the same is totally destroyed,'' and again, ''The measure, when personal property is destroyed, is its fair market value at the time and place of the injury.''

It was formerly quite generally supposed that the value of personal property at the time and place of its destruction was the full limit of its owner's right of recovery against the tort feasor, and in this state in Ormsby v. Johnson, 1 B. Mon. 80, even interest from the date of destruction was held not recoverable; but in the later case of Schulte v. L. & N. R. Co., 128 Ky. 627, the court, upon a careful consideration of the authorities, overruled the case of Johnson v. Ormsby, *supra,* and announced as the better rule and supported by the decided weight of authority, that in addition to the value at the time and place of destruction, if capable of accurate estimation, interest from such time should be allowed in the discretion of the jury.

But plaintiff did not ask interest in his pleadings or offered instructions. He did, however, plead as special damages, the loss of the use of his truck from the date of destruction until a new one could be procured, under

which plea and the evidence in support of it, the court authorized a finding, and the jury awarded him $200.00 for such loss as we have seen. So the inquiry narrows to the question of whether or not interest is the only allowance permissible in addition to the value of destroyed personal property, in estimating compensatory damages, where its value is capable of accurate estimation at the time of its destruction, as was the case here. To allow interest is unquestionably the simplest and in most cases, no doubt, the most satisfactory method of ascertaining the value of the loss of use, since it avoids any consideration of a peculiar value to the particular owner, which is allowable only under exceptional circumstances. Under circumstances nearly analogous to those here, in Weick v. Daugherty, 90 S. W. 966, this court refused to allow to a huckster lost profits resulting from loss of the use of his negligently destroyed wagon, until he could procure another, upon the ground that "the plaintiff can not recover anything on account of his inability to instantly supply himself with other property in lieu of that injured or destroyed. Such damages are too remote to be the subject of judicial ascertainment," citing in support thereof L. & N. R. Co. v. Tippenhauer, 10 Ky. L. R. 401, and 8 Am. & Eng. Enc. of Law, 2nd Ed., p. 618.

And in L. & N. R. Co. v. Schweitzer, 11 Ky. L. R. 310, and in Cully v. L. & N. R. Co. 320, the expenses incurred in an unsuccessful effort to avoid total destruction were rejected, upon the same theory that the value of personal property at the time and place of its destruction was the full measure of damages recoverable.

But in Schulte v. L. & N. R. Co., *supra,* the latest case upon the subject, this court said:

"Where personal property is injured or destroyed by negligent, wrongful or unlawful acts, and the owner is thereby deprived of its use and possession, in a suit to recover damages for the loss, he is entitled to the value of the property and the interest thereon in the discretion of the jury. If the recovery was limited to the value, he would receive no compensation for the deprivation of the use between the time of the injury and the trial, or the date he was restored to the use and possession if this happened before the trial, and the recovery would not be adequate recompense for the loss. This rule cannot be applied when it is sought to recover unliquidated damages, or in cases where no certain or fixed

sum is claimed that may be awarded as compensation, and the jury are authorized to and may assess any amount in their discretion. In this class of cases the amount the plaintiff is entitled to recover cannot be estimated at the time of the injury, or, indeed until there has been a verdict and judgment."

And in the same opinion:

"But where personal property is injured or destroyed, it can be replaced. The person damaged can be made whole. The loss he has sustained is capable of accurate, or at least approximate measurement, and, when he has received the value of the property with interest thereon, he has been compensated for the wrong done, and this is all that, in negligence cases when property only is involved and the elements of fraud, oppression, reckless or intentional wrongdoing are lacking, he is entitled to unless it is sought to recover for the use."

It would seem the court recognized in the above statements and especially, in the last line quoted, that the plaintiff might sue for and recover the value of the loss of use or interest at his option, and this is further clearly indicated later in the opinion where it is stated:

"There are cases in which it would be proper to allow the plaintiff to recover the value of the use of the property of which he was deprived by negligence or wrongful act; but, if a party desires to recover for the value of the loss of the use, it should be especially pleaded. This element of damage cannot be recovered under a general allegation of negligence as in the case before us. And, where damages are sought for the injury done the property, as well as damages for the deprivation of its use, interest is not allowable, as the recovery for the use takes the place of interest. In other words, a party may sue for the injury done personal property, and the jury may in their discretion allow him interest on the sum found, and should be so instructed, or he may sue for damages occasioned by the injury and also for the loss of the use, but he cannot recover interest as well as damages for the loss of the use."

It is therefore apparent that this court in its most recent opinion has so relaxed the ancient rule which limited the recovery for destruction of personal property to its market value at the time and place of the injury, that the recovery may include in addition to the value such consequential damages as proximately result and are sus-

ceptible of accurate estimation, and this relaxation is not only in accord with reason, but with the modern tendency of authority, as well.   See 8 R. C. L., sections 62-67; Sedgewick on Damages, sections 436-438; Sutherland on Damages, section 355; Joyce on Damages, section 1034-140.

The theory upon which consequential damages were rejected in the cases from this court, decided prior to the case of Schulte v. L. & N. R. R. Co. and cited above, was as we have seen, that they were too remote for judicial ascertainment, and there can be no fault found with the rule in such cases as it is applicable, but the reason for both the rule and its application fails when consequential damages which result proximately and naturally from the wrongful or negligent destruction of personal property, are capable of accurate ascertainment.   So the correct rule, if the compensation is to be as nearly adequate as the circumstances will permit as it of course should be, is to allow consequential damages when they can be accurately estimated, but to reject them, as too remote or speculative for judicial ascertainment, whenever they are incapable of accurate estimation.   This is the general rule applicable to all damages, long applied in this state and elsewhere for *injury* to personal as well as real property, and for breach of contract, and there is no good reason why it should not also apply to the *destruction* of personal property.   For why should the injured party not be permitted to recoup his whole loss, including consequential damages proximately resulting, when his personal property is completely destroyed, as well as when it is injured merely, or if his contract is violated?   The only sound reason for ever denying him any part of the loss he may suffer as the result of the wrongful act of another is that it is incapable of accurate estimation and therefore as a necessary rule of practice is too remote or too speculative for judicial cognizance.

Here the plaintiff was operating his truck daily as a common carrier over a scheduled route, and until he could replace it, he had either to rent another or abandon his business, and the rental value of the use of a truck until a new one could be provided was of easy and accurate ascertainment, as was also the value of the truck at the time and place of its destruction; the loss of the use was the proximate and natural result of its destruc-

tion, and having been pleaded as special damages, was a proper element of compensatory damages. As stated in Sedgwick on Damages, sec. 436:

". . . where however, the property was actually in use at the time it was destroyed, the plaintiff may recover compensation for the damage caused by the loss of it up to the time when he could replace it."

Instruction No. 4 having defined the measure of damages in substantial accord with the foregoing principles, was not prejudicial to appellant.

Wherefore the judgment is affirmed.