## C. & O. Railway Company v. Boren.

(Decided March 7, 1924.)

## Appeal from Boyd Circuit Court.

1. **Railroads—Petition Held to Authorize Instruction as to Failure to Keep Lookout.**—A petition alleging that defendant's train approached a dangerous and much-used crossing without signal or warning of any kind, at a speed of sixty miles an hour, held to warrant an instruction as to the failure to keep a lookout.

2. **Railroads—Failure to Keep Proper Lookout Held Gross Negligence.**—Train crew were guilty of gross carelessness and negligence in approaching an important section of a city and a much-used crossing at the rate of fifty miles an hour without keeping a proper lookout.

3. **Appeal and Error—No Complaint on Appeal of Instruction Where Similar One Offered.**—Even if submission to the jury of failure of those in charge of an engine to keep a proper lookout as they approached a crossing was not authorized by the pleadings, the defendant, having offered an instruction embracing this issue, cannot complain on appeal of the action of the court in so instructing.

4. **Trial—Erroneous Instruction Cured by Concluding Paragraph.**—An instruction which was erroneous as in effect stating that it was the duty of an engineer to give such warnings of the train's approach by bell or whistle, or both, as would inform the plaintiff of the train's approach, thus making it his absolute duty to see that warnings given were effective, held cured by its concluding paragraph properly defining the engineer's duty as to warnings, especially in the absence of evidence that plaintiff was not exercising ordinary care for her safety or that she was not in possession of her ordinary faculties.

5. **Railroads—Negligent Speed Held Cause of Destruction of Automobile.**—Though automobilist had ample time to have crossed a track regardless of speed at which train was running, this does not prevent negligent rate of speed without proper lookout being the cause of destruction of the automobile where the engine of the automobile stalled because of the bad condition of the crossing.

6. **Damages—Automobilist Held Entitled to Recover Market Value of Destroyed Automobile.**—Where automobile dealer stated that, while he sold destroyed automobile to plaintiff for less than its value, it was at the time of its negligent destruction by defendant worth $1,200, the court very properly authorized the recovery of the market value of the car.

7. **Damages—Court Properly Permitted Recovery for Loss of Use of Destroyed Automobile.**—In an action for destruction of an auto-

mobile, court did not err in permitting recovery for the loss of the use of the car during the time plaintiff was deprived of it, in addition to its market value, even though the reason plaintiff had been unable to procure another during this period was her inability to pay for the same, and not because a similar one could not be purchased in the market. .

8.. Appeal and Error—Instruction Permitting Recovery of Damages Not Prejudicial.—If instruction permitting recovery for use of car destroyed in addition to market value thereof was erroneous, defendant could not have been prejudiced thereby where the jury allowed the plaintiff only $1,080 in all, and the evidence was uncontradicted that the market value was $1,200.

WORTHINGTON, BROWNING & REED and PRICHARD & MALIN for appellant.

DYSARD & ADAMSON for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Affirming.

On April 4, 1921, appellee, Anna V. Boren, who lived in Ashland, Kentucky, took her automobile from the garage in which it was kept and after driving a short distance, attempted to cross the tracks of the C. & O. Railway Company at what is known as the Ann street crossing in the eastern portion of the city. At this point it appears that four tracks are maintained running north and south, two used as sidings and the others for east and west bound trains.

Appellee claims that as she approached the road she slowed up her car and looked carefully up and down, also listening for the sound of any approaching train, and while her vision was somewhat obscured by box cars having been placed on the siding, she discovered nothing calculated to prevent a safe crossing and proceeded on her way, and after having passed over the two siding tracks and the west bound main line, one of the wheels of her car dropped into a deep hole between the rails of the east main line causing it to stop suddenly, and, as she expresses it, "killing the engine;" and while endeavoring to start the machine she suddenly saw a train bearing down upon her but a short distance away, affording her only time to spring from the car and run a few feet before it was struck and utterly demolished.

On June 1, 1921, she filed a petition in the Boyd circuit court wherein suit was brought against appellant for $1,385.00 alleging the total destruction of her machine, which she claimed at the time of the accident was worth this amount, and the further sum of $120.00 which she alleges was lost by reason of the destruction of her automobile which she had used to carry passengers and packages to different parts of Ashland, by means of which she had cleared $2.00 per day; and up to the time of the filing of the suit she had been without its use for sixty days.

The petition alleged that the train was running at the rate of sixty miles an hour; that it failed to give signal or warning of any kind of its approach; and that the crossing was an especially dangerous one and had been allowed to become in a very bad state of repair, rendering it practically impossible to drive over it in safety. The answer of appellant contained a general denial of the allegations in the petition and alleged contributory negligence on the part of appellee, which was denied in her reply.

At the March term, 1922, the case was heard and the jury returned a verdict against appellant in the sum of $1,080.00, from which judgment this appeal is prosecuted. Upon their motion for a new trial being refused, appellant cites six grounds upon which a reversal is sought.

No. 1 alleges the admission of irrelevant, incompetent and immaterial evidence; and No. 2, a refusal to admit certain competent, relevant and material evidence.

After a careful reading of the testimony we see nothing to sustain these two contentions, and in fact they are not argued in appellant's brief.

No. 3. Because the court erred in overruling defendant's motion at the close of plaintiff's evidence and at the conclusion of all the evidence to peremptorily instruct the jury to find for it.

However, the transcript shows conclusively that the court was entirely correct in submitting the case to the jury.

No. 4. Because the court erred in giving to the jury instructions 1, 2, 3, 4, and 5.

Here the chief contention of attorneys for appellant seems to be centered upon the theory that plaintiff's

pleadings did not contain proper or sufficient allegations to justify the instructions offered by the court, and in their brief say: "It may be conceded that there was evidence introduced by appellee which could have authorized a finding that appellant was negligent in failing to keep the Ann street crossing in the proper state of repair, and that such testimony would have justified the submission of this question to the jury if plaintiff's pleadings had alleged negligence in this respect," and further contend that the petition seeks no recovery upon this ground; and while it is alleged that the crossing was in a bad state of repair, there is no allegation that such condition was the result of negligence on the part of defendant, and that the court did not give any instructions relative to the condition of the crossing, nor was any such instruction requested; and that so far as appellee's right to recovery, the condition of the crossing should have been disregarded; and further that the petition did not allege that there was no failure to keep a lookout on the part of those in charge of the train, and that no instruction relative to this should have been given; and in this respect we may say that the petition might have been more full and specific relative to the allegations herein questioned. However, it will be observed it does allege that appellant's train was running at the rate of sixty miles an hour, and that it approached the Ann street crossing without giving a signal or warning of any kind; and further that said crossing is an especially dangerous one and appellant had permitted it to become in a very bad state of repair, rendering it practically impossible to drive across it, and that it was a public street in the city of Ashland, all of which was known to appellant.

True the petition does not allege that the appellant failed to maintain the proper lookout for the safety of pedestrians and those desiring to cross the tracks, nor does it set out with any degree of particularity the exact hole into which the wheels of appellee's car became embedded, but, as stated above, we are of the opinion that the allegations as contained in the petitiion were entirely sufficient to authorize the court to offer the instructions complained of. The petition sets out that, owing to the fact that this crossing in question is located on one of the most important streets of Ashland and from 500 to 1,000 people cross it daily, it would appear that this alone

would place upon appellant the responsibility of proceeding over it with extreme caution and the exercise of great diligence and care to prevent accidents, especially when trains are being operated at excessive speed. While the testimony relative to this is somewhat contradictory, nevertheless, it would seem from that offered by appellee (page 3, transcript), and by George Barnett (page 25, transcript) and by C. C. Castle (page 37, transcript), and by Leonard Pack (page 51, transcript), that at the time of the accident appellant's train was running between fifty and sixty miles an hour; and the testimony of C. C. Castle (page 35, transcript) states that had the engineer been looking straight ahead of him he would have had a clear observation of the crossing for six hundred feet after coming around a bend in the road; but that he was looking out the side of the cab in the direction of the witness and did not turn to the front until within three hundred feet of the stalled car. In the testimony of the engineer (page 62, transcript), he admits that he was running fifty miles an hour, and after striking the automobile proceeded four hundred feet farther before bringing his train to a stop; and he further claimed that the peculiar construction of the boiler prevented his having a clear vision of the track, though he had put on his brakes more than two hundred feet from the crossing, but in admitting as he does that his train was running through the main street of a city at fifty miles an hour, which is seventy-three feet a second, it would appear conclusively that it was the sacred duty, if the rights of citizens and pedestrians are to be considered, that a proper lookout should be maintained to prevent wholesale slaughter. Neither the conductor, fireman or any other employe of the railroad testified relative to the rate of speed at which the train was running, but the fireman (page 74, transcript), admitted on cross-examination that he could have seen the crossing had he been looking when the train was a half a mile from it. Other employes are unanimous in their statements that all proper warnings and signals were given; nevertheless, we can not fail to reach the inevitable conclusion that they were guilty of gross carelessness and negligence in approaching this important section of the city and this much used crossing at the rate of fifty miles an hour without keeping a proper lookout upon their engine.

In the case of L. H. & St. L. R. R. Co. v. Davis, 106 S. W. 304, 32 Ky. L. Rep. 580, in an action against a railroad to recover damages where the plaintiff alleges in her petition that those in charge of the engine operated it upon the occasion in question carelessly and negligently and without warning or signal of its approach and at an excessive speed, which acts of the defendant resulted in the collision complained of, such allegations were held to be sufficiently broad to embrace the failure of those on the engine to keep a proper loookout as it approached the crossing, and the trial court did not err in submitting this issue to the jury under such a pleading. The court said:

"We are of the opinion that this case should have gone to the jury under proper instructions, as it cannot be assumed that the injury would have happened if appellee had performed its duty in keeping a lookout or giving warning of the approach of the train."

The instructions complained of in that case authorized the jury to find for the appellee for injuries resulting from the negligence of the engineer in failing to keep a lookout or to give signals of the approach of the engine by the blowing of whistles or the ringing of its bell. There was some testimony on the part of appellee to the effect that the engineer was guilty of negligence in each of these particulars, and the court, therefore, did not err in instructing the jury.

In the case at bar, even in the event that the engineer did give a proper signal when his train was approaching this crossing (though this is contradicted by several uninterested witnesses), it is uncontradicted and therefore must be admitted that neither he nor any employe of appellant maintained a proper lookout when approaching this crossing on a train running fifty miles an hour. We observe in L. & N. Railroad Co. v. Wilson, 148 Ky. 250, 146 S. W. 422; The McClintic Marshall Construction Co. v. Eckman, 153 Ky. 704, 156 S. W. 382, that even if the submission to the jury of the failure of those in charge of the engine to keep a proper lookout as they approached the crossing, was not authorized by the pleadings, the defendant having offered an instruction embracing this issue, cannot now complain on appeal of the action of the court in so instructing the jury. On page

28 of the transcript appellant offered instructions A and B, which embraced the identical point in question. Appellant further objects to instruction No. 1 offered by the court which in effect advised the jury that it was the duty of the engineer to give such warnings of the train's approach by bell or whistle or both as would inform or apprise the plaintiff of the train's approach, claiming that this instruction made it the absolute duty of the engineer to see that the warnings given were effective; but that no such duty was apparent, as the only requisite was to give such notice as would be reasonably sufficient to warn persons using the crossing of the train's approach. However, it would be observed that this alleged error, if such it was, is entirely remedied in the concluding paragraph of instruction No. 1, wherein the court said:

"The jury are instructed that the words or phrase, 'reasonably timely signals or warning,' as used in this instruction, is such a signal or warning of the coming of the train as was ordinarily sufficient to give notice of the approach of the train to any person wishing to use the Ann street crossing, and were themselves exercising ordinary care for their own safety and the safety of their car in so doing and also were in possession of their ordinary faculties."

Especially do we feel this to be the fact where there is no evidence that the plaintiff was not exercising ordinary care for her safety, or that she was not in possession of her ordinary faculties. Appellant further contends that even if it be admitted that the train was operated at a negligent rate of speed, appellee had ample time to have crossed the track, and in fact she admits that she might have done so in safety regardless of the speed at which the train was running if it had not been for the stalling of the engine of her automobile, therefore, it was the condition that caused the automobile to stall and not the speed of the train that resulted in the collision. However, it would appear to us that this contention is entirely without merit, as neither of the conditions above mentioned may have been responsible for the damages done, but more likely it was a combination of circumstances for all of which it would appear appellant was entirely responsible. For instance, if they allowed the space in

and between the rails to become in such a bad state of repair (and it was alleged in the petition that the condition of the crossing was bad and dangerous) as to allow the wheels of an automobile in attempting to cross to drop in and the machine to become stalled and then to have run their train at a negligent rate of speed without maintaining the proper lookout, whereby it was caused to run into and collide with the said automobile before it could be removed to a place of safety, their responsibility cannot be questioned or evaded.

Appellant also complains of instruction No. 5, wherein the court, in addition to authorizing a recovery for the market value of the car, further allowed a finding in favor of appellee for the loss of the use of her machine in an amount not exceeding $120.00. In the transcript, page 44, Max Stock, an automobile dealer of Ashland from whom Mrs. Boren purchased the automobile in controversy, stated that while he sold it to her for less than its value it was at the time of the accident worth $1,200.00 and on page 49, his partner, Cogan, verifies this statement, and finding no evidence to the contrary, we are of the opinion that the court very properly authorized the recovery of the market value of the car. Nor can we agree with the contention that the court erred in an instruction to the jury that they might find for the plaintiff for the loss of the use of her car during the time she was deprived of same in addition, even though the evidence tended to show the reason plaintiff had been unable to procure another during this period was due to her inability to pay for same and not because a similar one could not be purchased in the market. Schulte v. Louisville & Nashville R. R. Co. 128 Ky. 627, 108 S. W. 941, 33 R. 31; Louisville & I. R. Co. v. Schuester, 183 Ky. 504, 209 S. W. 542. However, even if the instruction permitting recovery for the use of the car had been erroneous, appellant could not have been prejudiced thereby, as the jury allowed the plaintiff only $1,080.00 in all and the evidence was uncontradicted that the market value of the automobile at the time of its destruction was $1,200.00. And upon the whole case we fail to find any error which would justify a reversal.

The judgment is affirmed.