95 P.2d 209

GIANNINI v. WILSON.

No. 4447.

Supreme Court of New Mexico.
Oct. 16, 1939.

Dudley Cornell, of Albuquerque, for appellant.

Joseph L. Dailey and K. Gill Shaffer, both of Albuquerque, for appellee.

ZINN, Justice.

The appellant sued in replevin, claiming the right to the immediate possession of an automobile in the hands of the appellee. The right to such immediate possession was

predicated upon an alleged breach and default in the terms of a conditional sale contract made on Nov. 30, 1936, between appellee and the Robinson Motor Company, which contract was thereafter assigned to the C. I. T. Corp. and later assigned to the appellant.

The appellee did not put up a forthcoming bond. He answered, denying the allegations of the complaint and cross-complained for damages claiming a wrongful replevin. The appellant replied to the cross-complaint, specifically alleging, not only default in payment, but also that the car had been depreciated and damaged, and that the appellant was insecure in that the appellee permitted others to drive the car, and that appellee had lost his regular employment and was without regular income.

Upon trial before the court, without jury, the court made findings of fact and conclusions of law. The material facts are that appellant on June 7, 1938, had purchased from the C. I. T. Corporation the note and contract. That on the same day the appellee was in default wth respect to the payment of $29.84 due upon the 30th day of May, 1938, there being a balance due on that date in the total sum of $205.54. One week after the assignment was made, the complaint in replevin was filed. Two weeks after the complaint was filed, to-wit, on the 28th day of June, 1938, the appellee tendered into court the sum of $29.84, representing the payment due on the 30th day of June, 1938. Thereafter on or before due date the appellee tendered into court an equal amount representing the current monthly payment. These, the appellant at all times, after filing suit, refused to accept, claiming that there was a default when the suit was filed, and that subsequent payments need not be accepted.

The record discloses that appellee had no notice or knowledge at any time of the assignment of the note and contract by the C. I. T. Corporation to appellant. It also appears from the record that on June 7th, 1938, the appellee sent and the C. I. T. Corporation received and retained the payment due May 30th, 1938, without notifying appellee that the same was not received and accepted as payment upon the obligation. On the contrary, on July 29th, 1938, the C. I. T. Corporation sent the check to the appellant without advising the appellee thereof. The appellee had no knowledge, direct or otherwise, that he was to be treated as a defaulting debtor, inasmuch as the only person he knew to be the holder of this paper was the C. I. T. Corporation.

Contrary to the allegations of the appellee in his cross-complaint, the record shows and the trial court found that the automobile in question was in a reasonably good condition and there were no facts nor circumstances which could have justified appellant in feeling or believing, in good faith, that his security was in any way reduced or jeopardized. The record also discloses and the court found that the car had suffered no damage of any kind from the time appellant saw the same just prior to purchasing the note and contract up

until the time possession thereof was taken by him under the writ.

The record discloses, and the trial court found, that the taking of the automobile was malicious, wrongful, in bad faith and without justification in law, and that the taking damaged the appellee in the sum of $448. This damage was ascertained by the following formula, and supported by substantial evidence, to-wit: The appellee at all times needed and made constant use of the automobile in his business and for family use. Of this he was deprived. The reasonable value of the use of said automobile was $4 per day. Pursuant to 1929 Comp.St. § 105-1711, the appellee was entitled to double the value of the damages, or $8 per day. This would amount to a total of $448 as the appellee had been deprived of the use of the car for a period of fifty-six days.

The trial court concluded as a matter of law that appellee was not in legal default in the payment of any installment upon the note and contract in question at the time the suit was brought, and that appellee did all he could, in view of the circumstances, to make payment to the owner of the paper, and did in fact make such payment to the only owner he knew, which payment was accepted and held, and which cured any default that had theretofore, and which might otherwise, have occurred. From the judgment entered this appeal was prosecuted.

Fifty four assignments of error are raised by appellant. These are grouped to present the legal issues, as follows:

(A) Payment to plaintiff's assignor after assignment and delivery of the note and contract to plaintiff is not effective to bind plaintiff or cure defendant's default.

(1) Right of holder of note and conditional sale contract to assign the same has been well established.

(2) There is no obligation of giving notice to vendee of such assignment.

(3) Payment to original holder after assignment is not binding upon the transferee.

(B) Replevin was proper action for assignee in possession of note and conditional sale contract upon default of contract.

(C) The theoretical rental value of a car for the whole period is not the proper measure of damages.

(1) The defendant should have taken reasonable precaution to minimize the damages.

(2) The measure of damages should not exceed the unpaid balance due upon the car.

(3) The damages should have been limited to those proved by the defendant by definite evidence to have been actually sustained.

The above grouping is by the appellant himself, and we shall treat them as he presents them.

Under Point A (sub-sections 1, 2 and 3) appellant sets forth the general principles of law applicable to the assignment of negotiable instruments and the rights of

the ultimate assignee as between himself and the maker. The right of a holder to assign a negotiable instrument, and the rights and liabilities flowing from such assignment, are not questioned by appellee. The principles of law governing such matters are sufficiently established and need not be here repeated.

The real and only question here to be determined is whether or not the assignee of a conditional sales contract must give notice to the conditional sale purchaser of his ownership of the paper before he can put such purchaser in default. In other words, can the assignee, the appellant in this case, take advantage of the claimed default of the appellee and repossess the automobile which is the subject matter of the conditional sales contract, without first giving notice to appellee that he, the appellant, is the assignee of the seller.

The appellant relies upon Hayden v. Speakman, 20 N.M. 513, 150 P. 292, 293. However, that case does not in any way involve a conditional sales contract but specifically decides the question of the rights and liabilities of parties under and by virtue of a mortgage on real estate given to secure the payment of a promissory note.

There is a clear distinction in law between the rights of a holder of a negotiable instrument and that of a buyer of a conditional sales contract.

The conditional sales contract upon which this suit is founded contains the usual title retention clause, and an acknowledgment by the purchaser that the contract is to be assigned to the C. I. T. Corporation. The suit itself is based on the title retention clause contained in the sales contract and the right to repossession under and by virtue of said clause. The case is not founded on the note. No right to repossess is given in the note in this case. Appellant is not in the position of a holder in due course of a negotiable instrument secured by a mortgage as collateral as he apparently believes himself to be, but is, rather, in the position of an assignee and holder of a non-negotiable instrument to-wit, a conditional sales contract. See Jones on Chattel Mortgages and Conditional Sales, § 1245.

Being in the position of any other assignee, his responsibilities to the original purchaser are governed by the law applicable to assignor and assignee of non-negotiable contracts. Appellant contends that there is no duty devolved upon him to inform the purchaser that he holds the paper and that all future payments should be made to him. The converse is the settled law on assignments and it is the duty of an assignee, under such an assignment, to notify the purchaser that payments in the future are to be made to him.

The United States Supreme Court in the case of Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, at page 269, 68 L.Ed. 628, 31 A.L.R. 867, at page 873, lays down the rule that: "If a debtor pays, or becomes bound to pay, a later assignee, he is not liable to an earlier assignee who failed to give him

notice of his assignment. And if, without notice of any assignment, he pays the assignor he cannot be held by the assignee. To safeguard against such things, it is necessary for an assignee to give the debtor notice of his assignment." See 4 Am.Jur. p. 301, and cases cited under note 10. Also 6 C.J.S., Assignments, p. 1156, § 100, and cases cited.

■ The appellant owed the duty to appellee to give notice of the assignment, and such notice was not given. The day of the assignment appellee made payment to the C. I. T. Corporation. With the proper notice, the appellee could either have paid the appellant or have informed the appellant of the payment made that day, and could have made the proper arrangements with the C. I. T. Corporation to have the payment transferred to the appellant.

The payment was made at the place designated in the note to the only person that appellee knew to pay.

In the case of C. I. T. Corporation v. Glennan, 137 Cal.App. 636, 31 P.2d 430, 431, decided by the District Court of Appeal, Third District, California, on March 31, 1934, and hearing denied by the Supreme Court, it is said: "The duty to protect one's interest does not alone devolve upon the maker of a nonnegotiable instrument, but an assignee, in order to protect himself, cannot remain silent. His duty is expressly stated in 3 California Jurisprudence, p. 269, as follows: 'Upon the assignment of a chose in action, title thereto is vested in the assignee, and notice to the debtor of the assignment is not necessary to the acquisition or perfection of the right or title of the assignee. But in order to protect his rights, the assignee must notify the debtor of the assignment, since the latter is entitled to all setoffs and defenses he may have or may acquire against the assignor, until he is notified of the assignment.' This statement of the law is supported by numerous decisions cited in the footnotes. See, also, 5 C. J. p. 960."

The facts in the California case are somewhat similar to the case here under consideration. The contract in the California case was assigned to the C. I. T. Corporation in accordance with a particular clause therein which provided that "I, or we, acknowledge, this day, receipt of a duplicate of this contract and admit notice of the intended assignment of this contract to the C. I. T. Corporation". After the purchase and without notice of the intended assignment having been completed, the defendant in the California case made several payments to the Motor Company from whom he had made the purchase. The C. I. T. Corporation contended that the defendant was given notice of the assignment by the clause in the contract herein quoted, and that all payments made to the Motor Company were made by defendant at his peril. However, the California court rejected the contention of the C. I. T. Corporation and, we believe, carefully and concisely stated the law.

We hold that there was an obligation on the assignee to give notice to the debtor of the assignment and, if the debtor under the

contract made payment to the original holder after assignment and without notice thereof, such payment is binding on the assignee and he cannot claim a default.

█ One other matter needs disposition. The testimony shows that the payment due from appellee on April 30, 1938, was paid by him on May 25, 1938, and accepted by the C. I. T. Corporation as such a payment. The next payment due on May 30, 1938, was not paid until June 7, 1938. From the record it is plain that the April payment was made on May 25, 1938. It is also apparent from a statement of account from the C. I. T. Corporation in the record that the payment made on April 20, 1938, was the payment due on March 30, 1938, that the payment made on March 24, 1938, was the payment due on February 30, 1938, and so on up the list of payments. This statement of the account in the record shows that appellee's payments were usually made a few days after maturity, and that the C. I. T. Corporation accepted such payments and credited them to appellee's account. The acceptance of these late payments was evidently a matter of common practice in the appellee's dealings with the C. I. T. Corporation.

In the case of Miller v. Modern Motor Company, etc., 107 Cal.App. 38, 290 P. 122, 124, the law is stated thus: "It is generally held that if the vendor acquiesces in the payment of many of the earlier installments, after the time fixed, and thus lulls the purchaser into the belief that prompt payment will not be insisted upon, he should, if he desires to insist upon a strict performance by the purchaser as to future installments, give him notice to that effect. 27 R.C.L. p. 453, citing Boone v. Templeman, 158 Cal. 290, 110 P. 947, 139 Am.St. Rep. 126, and numerous other authorities." See also Jones on Chattel Mortgages and Conditional Sales, § 1302.

It is a common occurrence in dealings of the nature here disclosed that the purchaser will run behind in the installment payments and later be permitted to pay them, though perhaps never keeping the payments up promptly. If the delayed payments are accepted by the seller to an extent that it has become a matter of practice under any particular contract, the seller cannot justly claim, or be permitted to enforce, a default for such failure of prompt payment, without reasonable notice to the purchaser that he proposes to return to the letter of the agreement.

█ There arose a duty on the part of the C. I. T. Corporation to give a notice to the appellee that a strict compliance with the contract would be demanded. Failing in such notice, the mere fact that appellee's payments were past due in each instance a number of days, will not be deemed a default. The assignee, the appellant here, stands in this respect in the same shoes as assignor, and we must necessarily hold not only that the appellant owed to the appellee the duty of notifying him that he was the owner of the contract, but also that he, the appellant, as the new owner of the paper, would thereafter insist upon a strict compliance with the contract before he could declare any default.

Coming now to Point B. The general proposition of law contended for by appellant (and which we have already set out in the beginning of this opinion) need not be questioned. This general proposition is not applicable here because there being no actionable default, the suit in replevin was untimely.

Coming now to Point C (Sub-sections 1, 2 and 3) of the appellant's contentions (relating to the award of damages) we must also rule against appellant.

Appellant advances the theory that the appellee should have taken reasonable precautions to minimize the damages. This in effect would be a demand that a defendant in a replevin suit acquire a forthcoming bond as soon as he was able to do so. There is no such duty imposed by law. Appellant argues that it is unconscionable that the appellee should sit back and lay a trap for double damages. It is not the appellee who caused the damages to be doubled, but rather the New Mexico Statutes which place the burden upon appellant not to wrongfully replevy. Comp.St.1929, § 105-1711, specifically provides for "double damages for the use of the same [the chattel] from the time of delivery." This penalty is imposed by statute for a wrongful replevy and the court cannot change the law. Whether the replevin was simply a mistake of fact upon the part of the appellant or was in bad faith as found by the lower court is immaterial. The statute settles the matter for us. The measure of damages in this case as fixed by the statute is the amount of injury inflicted upon the appellee by the wrongful replevin appellant sued out against the appellee.

The statute provides as follows: "105-1711. *Failure to prosecute—Judgment against sureties.* In case the plaintiff fails to prosecute his suit with effect and without delay judgment shall be given for the defendant and shall be entered against the plaintiff and his securities for the value of the property taken, and double damages for the use of the same from the time of delivery, and it shall be in the option of the defendant to take back such property or the assessed value thereof."

The damages were fixed by the court after hearing competent evidence. No testimony was offered by the appellant to contradict the evidence offered. In an effort to reduce the damage as much as possible the court fixed a sum even below the sum testified to, even though the lowest sum testified to as to the value of the use of the car was $5 per day. The only testimony introduced was that of an expert, a man in the business of renting automobiles, as to the rental value of automobiles in the City of Albuquerque. Appellee testified that he was, at the time the car was taken, engaged in leading a strike and that he used the car constantly in carrying pickets and keeping in general touch with the various picketing points. This was the business of the appellee and he used the car in that business. He lost the use of the car, as found by the court, for fifty-six days. At four dollars per day this would amount to $224. The statute then doubles this amount as a penal-

ty. Penalties may be harsh, but so is a wrongful replevin.

When the appellant failed in his replevin suit, he was a tortious invader of the property rights of the appellee, with double damages imposed upon him by statute. The measure of damage is the amount which will compensate for all of the detriment proximately caused by the wrongful replevy, and then doubled as provided by statute.

The appellee was deprived of the use of his car in his business. The reasonable rental value of the car is a proper measure of damage under such circumstances. As said by the Kentucky Court of Appeals in the case of Louisville & Interurban Railroad Co. v. Schuester, 183 Ky. 504, 209 S.W. 542, 545, 4 A.L.R. 1344: "Here the plaintiff was operating his truck daily as a common carrier over a scheduled route, and, until he could replace it, he had either to rent another or abandon his business, and the rental value of the use of a truck until a new one could be provided was of easy and accurate ascertainment, as was also the value of the truck at the time and place of its destruction. The loss of the use was the approximate and natural result of its destruction, and, having been pleaded as special damages, was a proper element of compensatory damages. As stated in Sedgwick on Damages [vol. 2, 9th Ed.] § 436: '* * * Where, however, the property was actually in use at the time it was destroyed, the plaintiff may recover compensation for the damage caused by the loss of it up to the time when he could replace it.' "

For the reasons given the judgment of the trial court will be affirmed. It is so ordered.

BICKLEY, C. J., and BRICE and SADLER, JJ., concur.

MABRY, J., did not participate.