457 P.2d 220

**S & W TRUCKS, INC., Plaintiff-Appellant,**

**v.**

**NELSON AUCTION SERVICE, INC.,**
Defendant-Appellee.

CONSOLIDATED

**CHICAGO PNEUMATIC TOOL COMPANY,**
Plaintiff-Appellant,

**v.**

**NELSON AUCTION SERVICE, INC.,**
Defendant-Appellee.

No. 296.

Court of Appeals of New Mexico.

June 27, 1969.

Lowell Stout, Dewie B. Leach, Hobbs, for appellants.

N. Randolph Reese, Hobbs, for appellee.

OPINION

SPIESS, Chief Judge.

This appeal relates to the liability of an auctioneer to certain claimants whose claims, though separately filed, were consolidated for the purpose of trial and appeal. Each complaint purports to state a cause of action in conversion based upon a claimed wrongful distribution of the proceeds of an auction sale. The appeal is from a judgment dismissing the complaints as against the auctioneer. We affirm the judgment.

Monarch Drilling Company, a Co-Partnership, (Monarch) was indebted to S & W Trucks, Inc., (S & W) and Chicago Pneumatic Tool Company (Chicago), and at their instance executed and delivered financing agreements to each of them to secure payment of the amounts owing. The

financing agreements cover identical property consisting of drilling rigs belonging to Monarch, together with certain related property.

These agreements were executed and delivered upon condition that S & W and Chicago consent to the holding of an auction sale of Monarch's assets including the drilling rigs and related property and, further, that neither of them would prevent or interfere with such sale. Monarch agreed that both S & W and Chicago would receive the full amount of their claims from the proceeds of the auction sale. Neither the consent to the sale, nor the agreement providing for payment from the proceeds of sale were stated in the financing agreements.

It is undisputed that the consent on the part of S & W and Chicago to the auction sale had the effect of waiving their liens upon the rigs and related property, at least for the purpose of the sale. Clovis National Bank v. Thomas, 77 N.M. 554, 425 P.2d 726 (1967).

After delivery of the financing agreements Monarch entered into a contract with Nelson Auction Service, Inc., (the auctioneer) to conduct a public auction sale of its assets, including the property subject to the financing agreements. The contract with the auctioneer included a provision for the payment of a percentage of the receipts of sale for services by the auctioneer, and likewise provided that Monarch would pay the sum of $3,000.00 for the purpose of advertising the sale.

Prior to the sale, Monarch delivered a letter to the auctioneer dated October 22nd, 1965, the material portion being as follows:

"This letter shall evidence our agreement with you as to our contract with you signed this date concerning the sale of our drilling rigs and related equipment located in our Hobbs, Lea County, New Mexico yard. This sale shall be held on December 1, 1965.

You are authorized to pay the sum of $8,815.59 from the proceeds of this sale to S & W Trucks, Inc., P.O. Box 792, Hobbs, New Mexico."

A similar letter bearing the same date and relating to the claim of Chicago in the sum of $10,400.62 was delivered to the auctioneer.

The sale was conducted and it appears that the proceeds were not sufficient to pay in full all of Monarch's secured creditors. Monarch then directed the auctioneer to make payment of certain stated amounts to its various creditors. The amounts paid S & W and Chicago in accordance with this direction were substantially less than the total of their claims.

It is the contention of S & W and Chicago that Monarch assigned to each of them a portion of the proceeds of the sale sufficient in amount to discharge the indebtedness, that the auctioneer had notice of the assignments and although the proceeds received by him for distribution were adequate to pay the amounts owing to both S & W and Chicago, the auctioneer failed to fully honor the assignments, and consequently become personally liable to S & W and Chicago for the unpaid portion of their claims.

Both S & W and Chicago rely upon the letters of October 22nd, 1965, as constituting assignments to them and likewise as notice to the auctioneer of the assignments. The trial court, however, concluded that these letters were insufficient to effect assignments and likewise failed as notice of assignments. We agree with these conclusions.

Although the language of an assignment may be informal, it must at least show an intention on the part of the owner of a right or interest in property to transfer it. United California Bank v. Behrends, 251 Cal.App.2d 720, 60 Cal.Rptr. 128 (1967); McCafferty v. Gilbank, 249 Cal.App.2d 569, 57 Cal.Rptr. 695 (1967); First State Bank v. Hall Flooring Company, 103 Ga.App. 270, 118 S.E.2d 856 (1961); Crutcher v. Scott Pub. Co., Inc., 42 Wash.2d 89, 253 P.2d 925 (1953). See also Nickell v. United States, 355 F.2d 73 (10th Cir. 1966); State

Bank of Southern Utah v. Stallings, 19 Utah 2d 146, 427 P.2d 744 (1967).

■ It will be observed that there is nothing in the language of the letters to indicate an intention on the part of Monarch to transfer the proceeds of the sale, or any portion thereof, to S & W and Chicago, or either of them. The letters are clearly insufficient to constitute assignments. In our opinion, they are no more than mere authorization to the auctioneer to make particular payments.

If we assume that the overall arrangement made between the parties at the time the financing agreements were executed and delivered had the effect of an assignment of the proceeds of sale or a portion thereof, these letters failed to effect notice of such assignment.

The Uniform Commercial Code, § 50A–9–318(3), N.M.S.A.1953, provides, with respect to a notification to an account debtor of the assignment of the account, that a notification which does not reasonably identify the rights assigned is ineffective.

■ These letters clearly do not meet the requirements of the Code. There is no language contained in them indicating that the proceeds of sale, or any part thereof, had in fact been assigned. Merely authorizing payment of a stated sum to a particular person cannot, in our opinion, be considered as a notification that such sum had been assigned to the individual to whom payment is authorized. The letters do not identify any rights or claimed rights of S & W and Chicago in any of the funds derived from sale.

The letters, as we have said, being merely an authorization to make a particular payment were subject to being revoked or modified by Monarch before payment was finally made.

We have not overlooked the contention that the auctioneer, by its pleadings, admitted the effect of the letters as instruments of assignment and notice thereof. We do not so construe these answers.

■ It is settled that notice to debtor of an assignment is necessary to impose upon the debtor an obligation of payment to the assignee. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867 (1924); Giannini v. Wilson, 43 N.M. 460, 95 P.2d 209 (1939).

■ In the absence of notice of assignment a debtor may, without incurring liability to the assignee, make payment to the assignor. Salem Trust Co. v. Manufacturers' Finance Co., supra. It would likewise follow that in the absence of notice of assignment the debtor may, without incurring liability to the assignee, make payment as directed by the assignor.

■ It is our view, and was that of the trial court, that the auctioneer did not become obligated to either S & W or Chicago for the payment of any sum whatsoever as a result of receiving the letters, and consequently did not incur liability to them by disbursing the funds in accordance with Monarch's later direction. We note here that judgment was obtained by S & W and Chicago against Monarch for the unpaid balance of their claims.

It is further contended by both S & W and Chicago that the trial court erroneously considered their claims on a so-called priority basis, which, we take it, contemplates a transfer of the liens from the rigs and related equipment to the fund derived from their sale. It is argued that so treating the claims and by preferring them over the costs of sale and auctioneer's fees there was sufficient money derived from the sale to fully pay both claims.

We find it unnecessary to consider this contention for the reason, as we have stated, that in the absence of assignment, or notice of assignment, the auctioneer's liability extended only to Monarch, and the distribution was made as it had directed. It follows that the judgment should be affirmed.

It is so ordered.

OMAN and HENDLEY, JJ., concur.