Delmar B. DENNIS

v.

FORD MOTOR COMPANY.

Civ. A. No. 68–1141.

United States District Court,
W. D. Pennsylvania.

Oct. 14, 1971.

---

Dougherty, Larrimer, Lee & Hickton, Pittsburgh, Pa., for plaintiff.

Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant.

KNOX, District Judge.

## OPINION

This is a products liability case based on diversity of citizenship of the parties. After a three-day trial, the jury returned a verdict in favor of plaintiff in the amount of $13,471 including $3,850 for loss of use of the tractor and trailer

destroyed in the accident. The defendant has filed a Motion for Judgment Notwithstanding the Verdict, Motion for Remittitur and/or Motion for New Trial.

On September 28, 1967, plaintiff purchased a new truck-tractor from Null Ford Sales, an authorized and franchised Ford dealer. The truck was then taken by plaintiff to his place of business where the plaintiff's brother, L. J. Dennis, mounted a fifth wheel, being the device by which a semi-trailer is connected, on the tractor. He then drove the tractor on a test run for a distance of approximately 10 miles. The truck was also tested by plaintiff's driver, Howard Dale Fisher. No difficulty was experienced in the operation of the truck during these test runs.

On September 30, 1967, on the first use of the tractor with a semi-trailer attached carrying a sawdust load, the tractor-trailer combination had proceeded approximately one and a half or two miles when going downhill it left the right side of the highway, hitting a culvert and some trees. The driver testified he felt the right front wheel give way and he then lost steering control. The plaintiff produced testimony that the tractor and trailer were both a total loss as a result of this accident. In addition, plaintiff testified to a loss of use of this equipment in the amount of $3,-865 for the time during which he was unable to replace the same. The court submitted to the jury a special interrogatory on loss of use and the jury returned a finding for this item, which was included in the general verdict. Judgment was entered in the total verdict in the amount of $13,471. The case is presently before this court on defendant's Motion for Judgment Notwithstanding the Verdict and/or Motion for New Trial and Motion for Remittitur of the amount found for loss of use.

The first issue raised by defendant in support of its motions for Judgment Notwithstanding the Verdict and/or New Trial is that plaintiff has not sustained the burden of providing all the necessary elements under the Restatement, Torts 2d § 402A. More specifically, the defendant complains that plaintiff had the burden, and failed to prove that any change in the vehicle from the time it left the defendant's control was not a contributing cause of the accident. The defendant contends that the addition of the fifth wheel to the tractor and the installation of a wet line are such substantial changes after the delivery of the tractor to the plaintiff as to insulate the defendant from liability for the malfunction.

■ "Whether reasonable and well-balanced minds would be satisfied from the evidence adduced that the defective condition existed when the machine was delivered" is the test to be applied. Greco v. Bucciconi Engineering Co., 407 F.2d 87 (3d Cir. 1969) affirming Judge Miller of this court in 283 F.Supp. 978 (W.D.Pa.1967). The transcript of the trial in this case shows sufficient evidence from which a jury might well conclude that these additions to the equipment did not contribute in any way to the accident involved. The testimony indicated that the fifth wheel was properly installed by one experienced in such work and that the installation was not related to the malfunctioning of the tractor. The fifth wheel was installed on the frame to the rear of the cab in the normal position for such device. The wreck according to plaintiff's evidence resulted from a malfunction of the steering mechanism. The addition of a fifth wheel and the installation of a wet line [1] were certainly not made in conjunction with an abnormal use of the tractor. On the contrary, these additions were such as must have been contemplated by the defendant manufacturer. Absent such changes the tractor could not have been used for the purpose for which it was designed, manufactured, sold and purchased, to wit: to haul semi-trailers.

---

1. A "wet line" connects the braking system on the tractor with that of the trailer.

A manufacturer may be insulated from liability for the malfunction of an instrumentality when a change in the condition of such an instrumentality causes or significantly contributes to the malfunctioning of the instrumentality involved. The plaintiff must demonstrate by a preponderance of the evidence that the malfunction was due to a defective condition which existed when the tractor was delivered. Plaintiff, however, is not required to disprove every possibility conceived by defense counsel's inventive mind. To require plaintiff to sustain such a burden is tantamount to abolishing his cause of action in such cases.[2] If believed, the testimony in this case, taken as a whole, would certainly permit the jury to infer (as it apparently did) that the sole cause of the accident was the defective right front king pin and the failure of the steering mechanism and that the purported "changes" were not "intervening superseding causes" such as would relieve defendant from liability. Greco v. Bucciconi Engineering Co., supra, citing 402A Comment q. See also comment p.

Furthermore, this court finds no authority for the proposition advanced by defendant that once a plaintiff attempts to establish a specific defect in a product, plaintiff is thereby foreclosed from relying on the principle [3] that evidence of a malfunction of a vehicle is sufficient to establish liability without proof of the specific defect causing the malfunction. In products liability cases, a plaintiff has not been required to make the election as to whether to prove his case with evidence of a general malfunction of the product or whether to prove his case by evidence of a specific defect in the product. If he is unable by expert testimony to pinpoint the defect he can still fall back on the fact of malfunction as evidence of a defect. MacDougall v. Ford Motor Co., supra. Requiring plaintiff to make such an election has no more basis in reason than requiring plaintiff to make an election to prove fatigue fracture or impact fracture. The jury is entitled to have as much evidence as possible presented to it with respect to any malfunctioning of a vehicle, whether such evidence be general or specific, in order that it can make a conclusion grounded in facts upon which to base its verdict. This court believes that the jury was properly instructed as follows: "You may find the Ford Motor Company liable to the plaintiff for damages if you conclude that the Ford tractor did not function properly even though the specific defect causing the malfunction has not been established, provided you find that no change in the tractor by plaintiff caused this accident." [4]

The Pennsylvania courts have not yet clearly delineated the effect of a "substantial change" in a 402A case. It is obvious that not every change in a vehicle will relieve a manufacturer of liability. For example, the addition of a radio and air conditioning would not affect responsibility for breaking of a defective wheel. The extension of 402A to component parts by the Supreme Court of Pennsylvania in Burbage v. Boiler Engineering & Supply Co., 433 Pa. 319, 249 A.2d 563 (1969) and the citation of the Greco cases with approval in Mac-

---

2. As stated by Mr. Justice (later Chief Justice) Stern in Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, at 25, 68 A.2d 517, at 528–529 (1949): " * * * Proofs to a degree of absolute certainty are rarely attainable; it is sufficient if they are such as to satisfy a reasonable mind; the law does not require the elimination of every possible cause of the accident other than that on which plaintiff relies, but only such other causes, if any, as fairly arise from the evidence. * * * "

3. Announced in Jarnot v. Ford Motor Co., 191 Pa.Super. 422, 156 A.2d 568 (1959); MacDougall v. Ford Motor Co., 214 Pa. Super. 384, 257 A.2d 676 (1969) allocatur refused; Greco v. Bucciconi Engineering Co., supra.

4. Transcript of proceedings, p. 401. See also pp. 390 and 391 where the jury was again told they must find that the defect was the proximate cause of the accident.

Dougall indicates an adoption of the expanding social policy behind 402A. See discussion under comment p to 402A. For these reasons, we believe the Pennsylvania courts will hold that for a substantial change to absolve the manufacturer under 402A the change must have some causal connection with the accident.

In the instant case the plaintiff's evidence showed that the steering mechanism failed within two days of the purchase of this tractor, with scarcely any mileage accumulated since such purchase. While defendant's testimony sought to prove that there was no defect in the steering and that the mishap was caused by improper placement of the fifth wheel which caused the outfit to go out of control this was obviously a jury question and the court is not disposed to interfere with the jury's decision.

Therefore, this court denies defendant's Motions for Judgment Notwithstanding the Verdict and/or Motion for a New Trial and finds that plaintiff has fully met the requisite burden of proof.

■ The second issue raised by defendant seeking a remittitur or reduction of the judgment is that plaintiff is not entitled to damages for loss of use of the tractor and trailer. Defendant has relied on Dixon v. Priester, 85 Pa. Dist. & Co.R. 109 (1952) and Cowher v. Dornhaffer, 47 Pa.Dist. & Co.R.2d 190 (1969) as supporting its position that no recovery can be had for the loss of use of a commercial vehicle damaged beyond repair. However, these cases are distinguishable in several particulars.

In the Dixon case, Judge Laub's opinion was to a considerable extent based upon the procedural aspects of the case, the claim for loss of use not having been clearly set forth. Testimony in Dixon

disclosed that as a result of collision, plaintiff suffered personal injuries which incapacitated him for three weeks during which time he was unable to drive a truck or conduct his business. Plaintiff's truck, used for commercial purposes, was totally destroyed in the collision. The complaint did not plead loss of earnings but the issue of loss of use was submitted to the jury on the theory that plaintiff could not have secured another piece of equipment nor have operated such equipment had it been secured for him during this three-week period. While observing that the plaintiff ought to recover his damages for loss of earnings if he, in fact, suffered that pecuniary loss, Judge Laub decided that plaintiff had not pleaded it and, therefore could not recover.[5] The same rationale prevails in Cowher, which cites Dixon as its authority.

The testimony adduced in the case presently before this court for decision discloses a significantly different set of facts. The plaintiff's Ford tractor and trailer were damaged beyond repair. A strike at the Ford Motor Company prevented plaintiff from replacing the tractor immediately. Replacement was required at once so that plaintiff could continue hauling for a shipper. On November 24, 1967, he ordered a Chevrolet tractor and took delivery on January 26, 1968. Testimony indicated that until replacements could be had plaintiff was required, in order to fulfill his commitments, to rent a tractor at $27 per day rental and a semi-trailer at $125 per week rental, both of which the jury found to be fair and reasonable.[6] Furthermore, the defendant cannot protest that it has been surprised as the loss of use item was specifically claimed in the complaint.

---

5. "Loss of use may be recovered for a reasonable period of time necessary to repair a damaged chattel or for its detention but not, as here, where the chattel is damaged beyond repair. Consideration of the facts in this case leads one to reason that plaintiff ought to recover his damage for loss of use since he suffered that pecuniary loss as the direct result of defend-

ant's negligence. On the other hand, to recover damages after the fashion which obtained here would be to permit a backdoor recovery for loss of earnings without pleading them or adhering to the rules which accompany attempted proof of such loss." 85 Pa.Dist. & Co.R. at 110.

6. Transcript, pp. 112–124.

The rule of thumb has long been that the measure of damages for the conversion or destruction of any chattel is the market value thereof at the time and place of conversion or destruction. Where the article destroyed is readily replaceable on the open market, there is ample justification for this convenient rule of thumb. However, difficulty arises "when this *convenient rule* of thumb is sought to be applied to every case regardless of the circumstances. * * * The general principle which should govern the matter is quite clear. Damages are supposed to compensate the injured person in full for the wrong which has been done him. If his loss is greater than the market value of the chattel at the time of its destruction, an owner should, on principle, be allowed additional items which will adequately compensate him unless some of those claimed items are so speculative as to create danger of injustice to the defendant." [7] In the instant case, the possibility of speculation was removed by testimony of the actual cost of the rentals as well as the sound reasons which compelled the incurring of such rentals.

This court fails to see any sound reason for a distinction between repairable and unrepairable damage which would justify loss of use for the former and not the latter even though the owner suffers loss because he cannot immediately replace; in both instances the property owners have lost the same thing, that is, the use of such property. Many jurisdictions have recognized such a distinction as fictitious and allowed recovery for the loss of use for the period before replacement can be obtained, especially where such damages are spe-

cially pleaded and capable of easy and accurate ascertainment. Reynolds v. Bank of America National Trust & Saving Assn., 53 Cal.2d 49, 345 P.2d 926 (1959); Buchanan v. Leonard, Wiebolt & Bartlett, 127 F.Supp. 120 (D.C.Colo. 1954); Wajay Bakery, Inc. v. Carolina Freight Carriers Corp., 177 So.2d 544 (Fla.App.1965); New York Central R.R. Co. v. Churchill, 218 N.E.2d 372 (Ind. App.1966); Peterson v. Bachar, 193 Kan. 161, 392 P.2d 853 (1964); Chesapeake & Ohio Rr. Co. v. Boren, 202 Ky. 348, 259 S.W. 711 (1924); Louisville & I. R. Co. v. Schuester, 183 Ky. 504, 209 S.W. 542 (1919); Louisville & N. R. Co. v. Blanton, 304 Ky. 127, 200 S.W.2d 133 (1947). New York Central R.R. Co. v. Churchill (Ind.App.1966) 218 N.E.2d 372.

There can be no doubt that damages for loss of use of a vehicle which is repairable are recoverable in Pennsylvania. Koren v. George, 159 Pa.Super. 182, 48 A.2d 139 (1946); Holt v. Pariser, 161 Pa.Super. 315, 54 A.2d 89 (1947). The Pennsylvania courts have also allowed the recovery of damages for loss of use where the chattels involved in a breach of warranty were clearly not "repairable". In Babcock Poultry Farm, Inc. v. Shook,[8] an action for breach of warranty under the Uniform Commercial Code, seller warranted that the baby chicks sold would reproduce in a certain manner or rate which they failed to do. The plaintiff was allowed damages for the difference between the value of the chicks as warranted and as actually received as well as for the loss of production (or loss of use) of the chicks if they had been as warranted.

Further support for this position is found in Restatement of Torts § 927.[9]

---

7. Guido et al. v. Hudson Transit Lines, Inc., 178 F.2d 740 (3d cir. 1950), interpreting New Jersey Law.

8. Babcock Poultry Farm, Inc. v. Shook, 204 Pa.Super. 141, 203 A.2d 399 (1964)

9. Restatement of Torts
"§ 927. Conversion or Destruction of a Thing or of a Legally Protected Interest Therein.
Where a person is entitled to a judgment for the conversion of a chattel or the destruction of any legally protected interest in land or other thing, the damages include

In note (1) comment on clause (b) of this section, it is said:

"On the other hand, as an alternative to interest during the period of detention, the damages can properly include *an amount for expenses in procuring a necessary substitute or for the value of the use of a substitute until a replacement of the subject matter can be made as stated in § 931, Comment c.*"

Pennsylvania has always been a strong supporter of the Restatements. There have been many misunderstandings in this area, caused it is believed by a misreading of § 928 of the Restatement and failure to consider § 927.

For the reasons set forth above, this court finds that the plaintiff must be permitted to recover the damages for loss of use awarded by the jury in order that the aggrieved party may be fully compensated for his losses resulting from defendant's wrong.

(a) the exchange value of the subject matter or the plaintiff's interest therein at the time and place of the conversion or destruction, or a different value where that is necessary to give just compensation, and

(b) *the amount of any further loss suffered as the result of the deprivation,* and

(c) interest from the time at which the value is fixed or compensation for the loss of use."