UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN SAMUEL RILEY, III; SANDRA
MARIE RILEY, Individually and as
Mother and Next Friend of John
Samuel Riley IV and Joshua
Samuel Riley; MAXINE CECILIA
WILLOUGHBY,
             *Plaintiffs-Appellants,*

             v.

DE'LONGHI CORPORATION, d/b/a
De'Longhi America,
             *Defendant-Appellee.*

No. 99-2305

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-99-44-PJM)

Argued: September 28, 2000

Decided: October 30, 2000

Before NIEMEYER and MICHAEL, Circuit Judges, and
Frederick P. STAMP, Jr., Chief United States District Judge
for the Northern District of West Virginia, sitting by designation.

Reversed and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Leonard I. Rosenberg, ROSENBERG & FAYNE, L.L.P.,
Riverdale, Maryland, for Appellants. Thomas Edward Healy, PINO &

ASSOCIATES, L.L.P., White Plains, New York, for Appellee. **ON BRIEF:** Scott L. Needleman, ROSENBERG & FAYNE, L.L.P., Riverdale, Maryland, for Appellants. Rudolph V. Pino, Jr., PINO & ASSOCIATES, L.L.P., White Plains, New York; Timothy L. Mullin, Jr., Edward W. Brady, MILES & STOCKBRIDGE, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

John Riley and Sandra Riley, Sandra Riley on behalf of their two children, and Maxine Willoughby (together, the "Rileys") sued the De'Longhi Corporation (De'Longhi), alleging that a defect in a portable heater manufactured by De'Longhi caused a fire in the Riley home. The district court entered summary judgment in favor of De'Longhi. Because we conclude that the Rileys have presented sufficient circumstantial evidence of a product defect to create a genuine issue of material fact, we reverse and remand for further proceedings.

### I.

On December 14, 1995, John and Sandra Riley, their two children, and Mrs. Riley's mother (Maxine Willoughby) were at the Riley home in New Carrollton, Maryland, when a fire started on the rear porch. Although the Rileys managed to escape serious physical injury, their home was severely damaged, many personal belongings were destroyed, and one of the children (Joshua) has been diagnosed with post-traumatic stress disorder.

At the time of the fire a portable oil-filled space heater manufactured by De'Longhi was located on the rear porch of the Riley home. An extension cord connected the heater to the wall outlet. After the

fire was extinguished, investigator James Laws from the Prince George's County Fire Department inspected the house. He observed beading and breaks in the extension cord and therefore concluded that an electrical overload in the extension cord caused the fire. The Rileys' insurance company, the Blue Ridge Insurance Company (Blue Ridge), hired an expert, Peter Vallas, to investigate the cause and origin of the fire. Vallas concluded that the fire originated in the heater, either from an electrical malfunction or a short circuit in the control panel or wiring. Blue Ridge brought a subrogation action against De'Longhi, which was eventually settled.

The Rileys filed a separate (diversity) action against De'Longhi, alleging negligence, breach of express warranty, breach of implied warranty of merchantability, strict liability, and violations of the Maryland Consumer Protection Act and Consumer Products Guaranty Act. The Rileys hired Trident Engineering Associates (Trident) to provide an expert opinion as to the cause of the fire. Trident assigned the case to electrical engineer Kenneth Fennell and fire investigator George Meyer. Fennell and Meyer wrote a report attributing the fire to an electrical malfunction within the heater's control panel and its attached wiring. De'Longhi also hired an expert, electrical engineer Leonard Wharton. Based on his observation of beading on the extension cord, Wharton concluded that the fire was caused by electrical and thermal failure in the extension cord.

De'Longhi moved for summary judgment, arguing that the Rileys' experts, Fennell and Meyer, could not identify a defect in the heater and that their opinions were based on conjecture. The district court granted De'Longhi's motion after concluding that Fennell's deposition testimony was too elusive. The Rileys appeal.

## II.

We review a grant of summary judgment de novo. *See Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 340 (4th Cir. 2000). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In considering the propriety of summary judgment, "[t]he evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in

[their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Under Maryland law a plaintiff in a products liability case must prove: "(1) the existence of a defect, (2) the attribution of the defect to the seller, and (3) a causal relationship between the defect and the injury." *Virgil v. "Kash n' Karry" Serv. Corp.*, 61 Md. App. 23, 30, 484 A.2d 652, 656 (Ct. Spec. App. 1984). This standard applies whether a claim is characterized as strict liability, negligence, or breach of warranty. *See Watson v. Sunbeam Corp.*, 816 F. Supp. 384, 387 n.3 (D. Md. 1993). In instances when the plaintiff cannot prove the existence of a defect through direct evidence, he or she is allowed to introduce circumstantial evidence from which an inference of a product defect can be drawn. *See Harrison v. Bill Cairns Pontiac*, 77 Md. App. 41, 50, 549 A.2d 385, 390 (Ct. Spec. App. 1988). This method of proving a product defect is sometimes called the "indeterminate defect theory."

De'Longhi makes two arguments: (1) the use of circumstantial evidence is inappropriate in this case and (2) even if circumstantial evidence is proper, the Rileys have not forecast a sufficient circumstantial case to proceed to trial. We disagree. Because the heater sustained severe fire damage, it is appropriate for the Rileys to use circumstantial evidence of a product defect. In addition, the Rileys have proffered sufficient evidence to allow an inference that a heater defect was the cause of the fire. They have thus created a genuine issue of material fact on the issue of whether the heater was defective.

A.

De'Longhi first argues that the indeterminate defect theory does not apply in this case because the heater was not completely destroyed and was in fact available for inspection. De'Longhi is correct that the indeterminate defect theory applies when an allegedly defective product is lost or destroyed in the accident. In such a situation, circumstantial evidence of a product defect is permitted because direct evidence may not be available. *See Restatement (Third) of Torts: Products Liability* § 3 cmt. b (1997).

In this case, even though the heater was available for inspection, it was substantially damaged as a result of the fire. The fire essentially consumed the control panel, the electrical switches, and the thermostat assemblies. The heater sustained such severe fire damage that direct evidence of a product defect may not be available. One of the Rileys' experts, Meyer, testified that he could not identify the precise failure within the heater because of the extensive damage. Therefore, this is an appropriate case for allowing the use of circumstantial evidence to prove a product defect.

## B.

De'Longhi argues in the alternative that the Rileys did not offer sufficient circumstantial evidence of a product defect to proceed to trial. Maryland courts consider five factors in determining whether a product defect may be inferred from circumstantial evidence:

> (1) expert testimony as to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; (5) the type of accident that does not happen without a defect.

*Harrison*, 77 Md. App. at 51, 549 A.2d at 390 (citations omitted). *See also* Watson, 816 F. Supp. at 387. When the evidence is viewed in the light most favorable to the Rileys as nonmovants, at least four of the *Harrison* factors tip in their favor. That is sufficient.

Under the first *Harrison* factor we must consider whether the Rileys have offered expert testimony as to possible causes of the accident. Their experts, Fennell and Meyer, authored a report which identified the heater as the source of the fire and specified that the problem was an electrical malfunction within the heater's control panel. Fennell testified at his deposition that the fire originated in the heater and that it was probably due to a manufacturing or design defect. In addition, Fennell identified the possible causes as a thermostat malfunction or a poor electrical connection. During his deposition Meyer testified that "the heater was responsible for the ignition source of this particular fire." Meyer also gave his opinion that the fire began

when plastic components in and around the thermostat ignited and fell into the control panel.

De'Longhi argues that the Rileys did not satisfy the first *Harrison* factor because their electrical engineering expert, Fennell, failed to identify a precise defect within the heater. Admittedly, Fennell's testimony is not a model of clarity and certainty. Although in the beginning of his deposition Fennell clearly stated his opinion that the fire originated within the heater, he later used more qualified language, stating that "the most probable cause was a failure inside the heater." De'Longhi points out that Fennell could not identify the particular connector that might have malfunctioned and that he could not say "one way or another for sure" whether the excessive heating he identified in a photograph was due to an incident within the heater. Nevertheless, De'Longhi's attempt to discredit Fennell's testimony fails for two reasons. First, the *Harrison* analysis is used to establish a circumstantial case when there is no direct evidence of a product defect. *See Watson*, 816 F. Supp. at 388 (noting the "significant distinction . . . between the evidence necessary to 'directly prove' a causal design defect and the lesser evidence required to meet the 'possible cause' factor of the *Harrison* indirect scheme of proof"). In a circumstantial case the "plaintiff need not explain specifically what constituent part of the product failed." *Restatement (Third) of Torts: Products Liability* § 3 cmt. c. Fennell's inability to identify a precise defect is therefore not fatal to the Rileys' effort to establish their case through indirect proof. Second, the first *Harrison* factor only requires testimony as to *possible* causes. Fennell testified that to a reasonable degree of engineering certainty, he believed the fire originated within the heater. He also said that, in his opinion, the cause was either a thermostat malfunction or a poor electrical connection. Fennell's testimony is sufficient to satisfy the first factor. Cf. *Harrison*, 77 Md. App. at 51, 549 A.2d at 390 (upholding summary judgment when expert's only testimony was that "'[c]ars shouldn't catch on fire going down the road'").

De'Longhi concedes that the Rileys satisfied the second factor — the occurrence of the accident shortly after the sale. We agree. The fire occurred only six months after the Rileys bought the heater and after just three uses. A six-month time span is short enough to satisfy the second factor. *Compare Harrison*, 77 Md. App. at 53, 549 A.2d

at 391 (five years after original sale is not a short time), *with Virgil*, 61 Md. App. at 33, 484 A.2d at 657 (two or three months is a short time after sale).

The third factor is whether the same accident has occurred in similar products. There is evidence that De'Longhi heaters have been identified previously as potential fire hazards. In 1991, in cooperation with the U.S. Consumer Product Safety Commission (CPSC), De'Longhi offered to provide free replacement control panels on its oil-filled electric heaters because of the CPSC's determination that some of the electrical controls posed a fire hazard. De'Longhi argues that this evidence is irrelevant because the heaters that were the subject of the voluntary corrective action were manufactured between 1980 and 1988, and the company concluded that the Rileys' heater was manufactured in 1995 or later. The Rileys argue that the date of manufacture is impossible to determine because the fire damage left the heater with no identifying marks. All we can say at this point is that the age of the heater is an open question. Furthermore, Fennell and Meyer testified that even if the Riley heater was of a newer design, information about the dangers of older heaters is still relevant because the layout of the control panel and the type of connectors used have not changed. We conclude that the CPSC's determination that certain De'Longhi heaters made in the 1980s posed a fire hazard is relevant, at least at this stage. Even if the Rileys' heater and the heaters subject to the recall are not exactly the same, there is expert testimony that the earlier heaters and the one here are sufficiently similar.

The fourth factor requires the elimination of other causes of the accident. Both Fennell and Meyer testified at their depositions that they did not believe that the fire originated from a source other than the heater. Fennell basically ruled out an external fire as the cause. Fennell also disagreed with the conclusion of De'Longhi's expert, Wharton, that the extension cord caused the fire. Fennell eliminated the extension cord because its solid conductors did not show signs of excessive overheating and there was insulation left on the cord. Meyer agreed with Fennell, noting that there was no evidence of extensive burning in the floor area around the extension cord. While De'Longhi's expert obviously disagrees with these conclusions, the Rileys have offered sufficient expert testimony eliminating other

causes of the fire. *See Watson*, 816 F. Supp. at 388-89 (children's testimony that they were not playing with matches and parent's testimony that the cords were unobstructed was enough at the summary judgment stage to eliminate other causes of an electric blanket fire).

Under the fifth factor we consider whether the fire in the Riley home is the type of accident that does not occur without a defect. The Rileys argue from common sense: given the circumstances in this case, the portable heater would not have ignited and caused a fire unless it was defective. De'Longhi argues that this sort of accident could have happened in the absence of a defect; specifically, De'Longhi points to the extension cord as a possible cause of the accident. It is unclear to us just how the fifth factor should be interpreted. On the one hand, we could require the Rileys to show that this accident would not have happened unless the heater was defective, even if other causes (such as the extension cord) were not eliminated. *See Watson*, 816 F. Supp. at 389 (reading the fifth factor to mean that "even if other causes are *not* eliminated, [a plaintiff must show that] the accident is of a type that does not ordinarily happen unless a defect exists" (emphasis added)). In that case, the Rileys would not satisfy this factor because a defect in the heater would not be the only possible explanation for the fire. On the other hand, if we accepted Fennell's and Meyer's testimony eliminating other causes of the accident, as we did for factor four, we would inevitably reach the conclusion that the heater could not have caught fire unless it was defective. *See Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 210-11 (7th Cir. 1994) (assuming no consumer misuse, the shattering of a glass jar does not happen absent a defect); *Stackiewicz v. Nissan Motor Corp.*, 100 Nev. 443, 449, 686 P.2d 925, 928 (1984) (assuming that other causes have been eliminated, the malfunction of a product is sufficient evidence of a defect). We do not have to resolve this problem, however. Even if the Rileys failed to satisfy the fifth factor, their evidence on the first four factors is sufficient to create a circumstantial case that the heater was defective. *See Watson*, 816 F. Supp. at 389 (defendants were not entitled to summary judgment when plaintiffs satisfied three of the *Harrison* factors).

In conclusion, the Rileys have satisfied four of the *Harrison* factors, and that is adequate in this case to create a genuine issue of material fact as to whether the heater was defective. In other words,

a reasonable jury could draw an inference of a product defect from the circumstantial evidence that the Rileys have proffered. The district court therefore erred in granting summary judgment in favor of De'Longhi. We reverse the judgment and remand the case for further proceedings.

*REVERSED AND REMANDED*