68 P.3d 896 (2003)
NEVADA CONTRACT SERVICES, INC., Appellant,
v.
SQUIRREL COMPANIES, INC.; Squirrel Systems of Canada, Ltd.; Sulcus Hospitality Technologies Corp.; Sulcus Hospitality Group, Inc.; Vega Enterprises, Inc.; and Beverage Management Systems, Inc., Respondents.
No. 37706.
Supreme Court of Nevada.
May 14, 2003.
*897 John Peter Lee Ltd. and John Peter Lee and Paul C. Ray, Las Vegas, for Appellant.
Jolley Urga Wirth & Woodbury and William R. Urga, Las Vegas, for Respondent Vega Enterprises.
Law Office of V. Andrew Cass and Michael R. Hall, Las Vegas, for Respondent Beverage Management Systems.
Santoro, Driggs, Walch, Kearney, Johnson & Thompson and Nicholas J. Santoro, Elizabeth E. Wachsman, and James E. Whitmire III, Las Vegas, for Respondents Squirrel Companies, Squirrel Systems of Canada, Sulcus Hospitality Technologies, and Sulcus Hospitality Group.
Before ROSE, MAUPIN and GIBBONS, JJ.

OPINION
PER CURIAM.
In this appeal, we consider the degree of specificity required to sustain the causation burden when claiming a breach of express or implied warranty. Specifically, we address whether the plaintiff had to prove the cause of a malfunctioning liquor-dispensing system in order to defeat a motion for summary judgment. We hold that a plaintiff is not required to prove the precise technical cause of a malfunction to sustain its causation burden. Instead, a plaintiff must show that a product's malfunction was likely caused by a breach of warranty, and consequently, the plaintiff sustained damages.

FACTS
In 1997, Nevada Contract Services, Inc. (NCS) and Vega Enterprises, Inc. (Vega) entered into a contract by which Vega agreed to supply NCS with a new specially designed liquor-dispensing system for use in The Gipsy, a bar it owned and operated in Las Vegas. The liquor-dispensing system was designed to provide inventory control and security from theft by calculating the amount of alcohol served and by charging an appropriate amount in proportion to the serving.
The liquor-dispensing system consisted of two component systems: (1) a liquor-dispensing system called "EasyBar" manufactured by Beverage Management Systems, Inc. (BMS), and (2) a point-of-sale cash management system manufactured by Squirrel Companies, Inc. (Squirrel). BMS was responsible for designing an interface card that would allow the two systems to respond to one another and function as one system. Vega purchased the component systems directly *898 from BMS and Squirrel and then oversaw integration and installation of the liquor-dispensing system in The Gipsy.
Shortly after the liquor-dispensing system was operational, it began to experience problems. Specifically, the "tab screen" malfunctioned, allowing the EasyBar pour system to dispense drinks without communicating with the Squirrel point-of-sale system. And the liquor-dispensing system would occasionally "freeze-up," impeding the bartenders from pouring alcohol. NCS filed a complaint against respondents alleging, among other things, breach of express and implied warranties. According to NCS, The Gipsy suffered economic losses as a result of the malfunctioning liquor-dispensing system because the bartenders often resorted to free-pouring alcohol and could pour drinks without a sale being registered.
Prior to filing its complaint in the district court, NCS made numerous requests that the problems it was experiencing with the liquor-dispensing system be corrected. In response, service technicians from Vega, Squirrel, and BMS evaluated the liquor-dispensing system. Upon inspection, the technicians found a lack of dedicated power; water damage to the EasyBar system caused by a leaking water filter near the EasyBar system's control box; and employee misuse, namely the liquor-dispensing guns were submerged in water for cleaning and one of the pumps had a nail in it. The parties disputed whether these findings could have caused the liquor-dispensing system to malfunction.
George Hill, the designer of the interface card for the liquor-dispensing system, opined that the lack of dedicated power and water damage could have caused equipment malfunctions, but likely did not cause the tab screen malfunction. Joseph Cortese, a Squirrel technician, opined that the tab screen malfunction was likely caused by a problem with the interface from the EasyBar system. Indeed, Squirrel's core programmer analyzed a record of messages from the liquor-dispensing system and determined that the EasyBar pour system was failing to properly communicate with the Squirrel point-of-sale system.
Cortese explained that the Squirrel engineers had difficulty recreating the tab screen malfunction during testing because they were unable to replicate the set-up in The Gipsy due to unique conditions found in The Gipsy, such as the water damage and lack of dedicated power. Additionally, the engineers only had access to a similar EasyBar system, not the one actually utilized in The Gipsy's liquor-dispensing system. Cortese also acknowledged that the Squirrel engineers were never able to perform on-site testing of The Gipsy's liquor-dispensing system.
Christopher Launey, an expert witness for NCS, also expressed his inability to recreate the tab screen malfunction. Launey explained that there were too many variables present at The Gipsy that could not be recreated in a testing situation. Another expert hired by NCS, Joseph Krupinski, tested the liquor-dispensing system following its removal from The Gipsy; the liquor-dispensing system was stored in an empty office for about a year before the parties convened to test it. Krupinski, however, was unable to recreate the liquor-dispensing system's malfunction. Krupinski acknowledged that he could come up with at least fifty things that may have caused the liquor-dispensing system to malfunction.
Following Krupinski's inability to opine as to the cause of the liquor-dispensing system's malfunction, respondents filed a motion for summary judgment, arguing that NCS could not sustain its causation burden. The district court expressed concern over the fact that NCS's own experts could not opine as to the probable cause of the liquor-dispensing system's malfunction. NCS responded that the experts were attempting to pinpoint the exact cause of the malfunction, not the probable cause, and argued that it did not have to prove the precise cause of the malfunction.
The district court disagreed, observing that the case was not one involving strict products liability, where the plaintiff does not have to show causation; but rather, it was a case under the Uniform Commercial Code, where the plaintiff bears the burden of showing proximate causation. After finding that NCS could not prove causation, the district *899 court granted summary judgment in favor of respondents. This appeal followed.

DISCUSSION
We review orders granting summary judgment de novo.[1] Under some circumstances, we must determine whether the district court correctly perceived and applied the law.[2] After viewing all evidence and taking every reasonable inference in the light most favorable to the nonmoving party, summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[3] If there is the slightest doubt as to any material issue of fact, the litigant has a right to trial by a jury.[4]
We have recognized that purely economic losses can be recovered for breach of warranty.[5] In a breach of warranty cause of action, a plaintiff must prove that a warranty existed, the defendant breached the warranty, and the defendant's breach was the proximate cause of the loss sustained.[6] Here, the district court granted summary judgment in favor of respondents because NCS could not prove its breach of warranty claim, as it could not sustain its causation burden.
In this appeal, we consider the degree of specificity required to meet the causation burden in a breach of warranty action. In Nelson v. Wilkins Dodge, Inc.,[7] the Minnesota Supreme Court observed that in a breach of warranty case, "generally no specific defect need be alleged, and a defective condition can be proved by circumstantial evidence." Likewise, in Hershenson v. Lake Champlain Motors, Inc.,[8] the Vermont Supreme Court observed:
"Circumstantial evidence may be resorted to ... if there can be drawn therefrom a rational inference that [a defect in the defendant's product] was the source of the trouble. There must be created in the minds of the jurors something more, of course, than a possibility, suspicion or surmise, but the requirements of the law are satisfied if the existence of this fact is made the more probable hypothesis, when considered with reference to the possibility of other hypotheses."
We agree with those courts that hold that the specific cause of the malfunction need not be shown. Indeed, we reached a similar conclusion in Stackiewicz v. Nissan Motor Corp.[9] Although Stackiewicz is a products liability case, we are adopting a similar causation burden in breach of warranty actions. In Stackiewicz, we stated that requiring a plaintiff to prove the specific cause of a product defect or to negate alternative causes in order to establish that a product is defective is far too restrictive.[10] Applying this reasoning, we conclude that it is too burdensome to require a plaintiff to prove precisely why a product does not work in a breach of warranty action, specifically in instances such as the one presented here, where a product integrating electronic and mechanical components is involved.[11]
*900 Based on the testimony of the various technicians, we conclude that there was sufficient evidence to support a reasonable inference that respondents breached the warranty and caused NCS's damages. We acknowledge that NCS's experts could not opine as to the precise cause of the liquor-dispensing system's malfunction and that there is evidence of alleged misuse of the liquor-dispensing system that may have contributed to the malfunction; however, such evidence affects the weight of NCS's case.[12] Thus, we conclude that a genuine issue of material fact exists, thereby precluding summary judgment.

CONCLUSION
We hold that a plaintiff need not show the specific technical cause of a product's malfunction in order to sustain its causation burden in a breach of warranty cause of action. Because NCS produced evidence creating an inference that the newly acquired liquor-dispensing system's problems were not related to misuse and may have resulted from respondents' breach of warranty, we conclude that NCS is entitled to litigate its case before a jury.
Therefore, we reverse the district court's order granting summary judgment in favor of respondents, and remand for further proceedings consistent with this opinion.
NOTES
[1] Lumbermen's Underwriting v. RCR Plumbing, 114 Nev. 1231, 1234, 969 P.2d 301, 303 (1998).
[2] See Calloway v. City of Reno, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000).
[3] Posadas v. City of Reno, 109 Nev. 448, 452, 851 P.2d 438, 441-42 (1993).
[4] Pressler v. City of Reno, 118 Nev. ___, ___, 50 P.3d 1096, 1098 (2002).
[5] See Central Bit Supply v. Waldrop Drilling, 102 Nev. 139, 140-41, 717 P.2d 35, 36 (1986).
[6] See Dickerson v. Mountain View Equipment Co., 109 Idaho 711, 710 P.2d 621, 624 (Ct.App.1985); see also U.C.C. § 2-314 cmt. 13 (2000).
[7] 256 N.W.2d 472, 476 (Minn.1977).
[8] 139 Vt. 219, 424 A.2d 1075, 1078 (1981) (quoting Patton v. Ballam, 115 Vt. 308, 58 A.2d 817, 821 (1948)).
[9] 100 Nev. 443, 450-51, 686 P.2d 925, 929 (1984) (concluding that "evidence of a steering malfunction which resulted in the [plaintiff] losing control of [her] vehicle might properly be accepted by the trier of fact as sufficient circumstantial proof of a defect, or an unreasonably dangerous condition, without direct proof of the mechanical cause of the malfunction").
[10] Id. at 447, 686 P.2d at 927.
[11] Cf. Capitol Dodge Sales v. Northern Concrete Pipe, 131 Mich.App. 149, 346 N.W.2d 535, 539 n. 11 (1983) (holding that a new car's inoperability establishes its failure to conform to the contract of sale without showing the specific technical cause of the overheating); Eggl v. Letvin Equipment Co., 632 N.W.2d 435, 439 (N.D.2001) (holding that evidence that a farm tractor was not fit for the ordinary purposes for which such goods are used was sufficient when it was shown that the tractor could not be used to pull an implement).
[12] Stackiewicz, 100 Nev. at 452, 686 P.2d at 930 (observing that it is within the province of the jury, not the court, to weigh the credibility of the plaintiff's evidence in order to determine whether the defendant caused the plaintiff's damages).